UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

THOMAS W. TRIPP,

    **Plaintiff,**

v.                                                   CASE NO.:

TMC SERVICES, INC.,

    **Defendant.**

## COMPLAINT

**COMES NOW** plaintiff, Thomas W. Tripp, by and through undersigned counsel, and alleges:

**I.**   **PARTIES**

**A.**   **THOMAS W. TRIPP**, is a person of the full age majority, citizen of the United States, and resident of Pensacola, Florida. Mr. Tripp was engaged in the oil spill clean-up activities aboard a vessel and/or fleet of vessels own by TMC Services, Inc. in Pensacola, Florida subsequent to the Deepwater Horizon Disaster when he was exposed to oil, dispersants, and/or oil/dispersant mixtures.

**B.**   **TMC SERVICES, INC** (hereinafter referred to as "TMC") - a New Jersey corporation with its principal place of business in Livingston, New Jersey. TMC is subject to *in personam* jurisdiction of this Court because it purposefully availed itself of the laws and benefits of the state at the time of the accident giving rise to this litigation because it conducted sufficient business activities in the State of Florida and within the Federal District to confer same. Further, TMC's activities in the State of Florida were substantial, continuous, and systematic with respect

1

to claims which are subject to this litigation. Finally, the harmful effects of TMC's negligent conduct was felt in Florida.

## II. JURISDICTION AND VENUE

**1.**

All claims raised herein by Plaintiff TRIPP are brought pursuant to 28 U.S.C. §1333 and 46 U.S.C. § 30104.

**2.**

Further, the claims presented herein are admiralty or maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and Claimants hereby designate this case as an admiralty or maritime case as provided in Rule 9(h).

**3.**

Venue is appropriate in this District under 28 U.S.C. § 1391, because the events or omissions giving rise to the claims asserted herein occurred in the Northern District of Florida.

## III. FACTUAL ALLEGATIONS

### A. The Deepwater Horizon Catastrophe

**4.**

On or about April 20, 2010 there was an explosion of an oil vessel in the Gulf of Mexico, which we now refer to as "the Deepwater Horizon Catastrophe." The explosion ignited a raging fire on the Deepwater Horizon and burned for two days before sinking to the ocean floor.

**5.**

As the Deepwater Horizon tipped into the sea, the long riser pipe connecting the vessel to the wellhead on the seafloor bent and broke, leaving the pipe leaking oil out of its now-open end, as well as through two breaks along its length. An emergency valve, installed on the wellhead for

just such a disaster, failed to seal the wellhead as it should have, causing the blown-out well to spew oil into the Gulf waters (the "Oil Spill").

6.

Each day during the course of the Oil Spill, tens of thousands of barrels of crude oil gushed from the wellhead and broken riser, bubbling up to the surface and flattening out into a widening slick of oil, as well as spreading out in vast subsurface plumes. On the surface, covered tens of thousands of square miles, and spreading with the wind and currents towards the Gulf States' coastlines, where oil made landfall on white sand beaches, marshes, and estuaries. Under water, immense plumes of oil and dispersant chemicals swirled through the entire water column.

7.

Chemical dispersants were used to break down the oil into finely dispersed droplets. Dispersants generally contain a solvent, a surfactant and other additives that break up the surface tension of an oil slick or sheen to make the oil more soluble in water.

8.

Chemical dispersants were sprayed onto the ocean surface from fly-over aircraft dispensing the chemicals from cargo holds, sprayed onto the ocean surface from fountain-type jets on the decks of boats, sprayed from smaller vessels onto the surface of the water, injected immediately below the surface of the water from vessels, injected deep below the surface of the ocean, and sprayed by hand.

B.   **Plaintiffs' Exposure to the Harmful Chemicals.**

9.

Plaintiff worked as a boat captain aboard a vessel and/or fleet of vessels owned by TMC, Services Inc. During his shifts, he recalls seeing planes flying over and releasing dispersant

material into the air which eventually came into contact with the vessels he was operating. The areas in the Gulf of Mexico where Plaintiff worked were commonly referred to as "Hot Zones." Due to the concentration of dispersants present in the air, air filters located in the vessels' air conditioners became saturated with dispersant material. Therefore, his superiors ordered the crew to remove the material with liquid Cascade. Plaintiff contends that it was impossible to avoid inhaling the toxic material. Furthermore, at no time was he ever supplied with safety gear such as gloves, masks, goggles, and etc.

10.

As such, Plaintiff was exposed to crude oil and dispersants, oil/dispersant mixtures, and other harmful chemicals by inhalation, ingestion, dermal exposure, and through contact with the eyes. At no time was Plaintiff TRIPP ever warned of the harmful effects of being exposed to crude oil, dispersants, and oil/dispersant mixtures.

11.

Exposure to chemicals in crude oil, chemical dispersants, and oil/dispersant mixtures can cause a wide range of health problems. Crude oil has many highly toxic chemical ingredients that can damage every system in the body and many of the same organs including but not limited to: respiratory system, nervous system (including the brain), liver, reproductive/urogenital system, kidneys, endocrine system, circulatory system, gastrointestinal system, immune system, sensory systems, musculoskeletal system, hematopoietic system (blood forming), skin and integumentary system and disruption of normal metabolism.

12.

Damage to these systems can cause a wide range of diseases and conditions. Some of these diseases and conditions may be immediately evident, and others can appear months or

years later. Many of the chemicals in crude oil and the dispersants target the same organs in the human body, and this increases the risk and may also increase the severity of harm.

### 13.

Due to said exposure, Mr. Tripp manifested symptoms including but not limited to: respiratory problems, headaches, rash and lesions of the skin, facial skin cancer, skin cancer on arms, blurry vision, red eyes, watery eyes, itchy eyes, bloody nose, neck tumors, arm tumors, back tumors, gastrointestinal stomach tumor, foot tumors, and sinus infection. Said ailments have diminished Mr. Tripp's quality of life and caused him to incur considerable medical expenses while unable to procure meaningful employment.

### 14.

As such, actual, compensatory and punitive damages should be awarded to Petitioner for the injuries he has sustained as a result of Defendants' knowledge, conduct, acts and omissions as set forth herein.

### 15.

Plaintiff claims that the incidents giving rise to this action were directly caused by the negligence of the defendant, TMC SERVICES, INC. in the following non-exclusive respects:

### C.     The Willful and Wanton Conduct of the Defendants

### 16.

Defendant by its conscious and/or deliberate unreasonable acts and/or omissions complained of herein, and/or as the evidence may show, displayed gross negligence, reckless indifference, willfulness and/or wantonness.

17.

The Defendant recklessly, willfully and/or wantonly failed to ensure that adequate safeguards, protocols, procedures, safety equipment, chemical data sheets, and other resources would be readily available to warn, prevent, and/or mitigate the effects of the workers being exposed to oil, chemical dispersants, and/or oil/dispersant mixtures.

D. **Defendant's Knowledge of the Risks**

18.

At all times relevant to this litigation, the Defendant knew or should have known that:

a) Crude oil contains chemicals hazardous to human health;

b) Chemical dispersants contain chemicals hazardous to human health;

c) Plaintiff should have been adequately and timely warned of the harmful effects of crude oil and chemical dispersants, and the hazardous substances which they contain, which are being released into the environment; and,

d) Petitioner should have been equipped with proper protective gear, properly trained for avoiding exposure to the chemicals, and provided with material safety data sheets relevant to the chemicals used for recovery.

IV. **DAMAGES AND OTHER RELIEF REQUESTED**

19.

As a result of Defendant's acts or omissions, Plaintiff suffered the following physical injury damages:

a) Past, present, and future pain and suffering due to exposure to chemicals in crude oil that have caused adverse health effects;

b) Past, present, and future pain and suffering due to exposure to chemicals in dispersants that have caused adverse health effects;

c) Past, present, and future pain and suffering due to exposure to chemicals in crude oil/dispersant mixtures that have caused adverse health effects;

d) Past, present, and future pain and suffering due to exposure to chemicals in oil and dispersant mixtures that have caused adverse health effects;

e) Past, present, and future medical, hospital, and pharmaceutical expenses;

f) Past, present, and future mental anguish and emotional trauma;

g) Past, present, and future loss of enjoyment of life;

h) Past and present loss wages;

i) Past and future loss of earning capacity;

j) Loss of consortium;

k) Other damages itemized at the trial of this matter.

### 20.

Petitioner also demands injunctive and equitable relief and further, that Defendant be ordered to provide medical monitoring for Petitioner.

## V. CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

*Negligence*

### 21.

Petitioner re-alleges each and every allegation set forth in all preceding paragraphs as if fully restated here.

22.

Petitioner contends that the conduct of the Defendant is the cause-in-fact liable for his injuries and resulting damages were the cause-in-fact and proximate cause of the Defendant's breach of their duties of due care in the following non-exclusive respects:

a) Failing to warn Petitioner of the harmful effects of crude oil, chemical dispersants, and any mixture thereof, and the hazardous, carcinogenic substances that they contain.

b) Failing to properly train and equip Petitioner to avoid exposure to hazardous substances encountered in connection with relief efforts;

c) Failing to abide by the provisions of the National Contingency Plan;

d) Failing to otherwise exercise reasonable care in the operation, maintenance, handling, design, implementation and execution of the relief and recovery measures to avoid harm to Petitioner.

23.

Defendant's breach of their duties posed an unreasonable risk of harm to Petitioner.

24.

At all times relevant to this litigation, Defendant knew or should have known that:

(a) Chemical dispersants contain chemicals hazardous to human health;

(b) Petitioner should be adequately and timely warned of the harmful effects of chemical dispersants, and the hazardous substances which they contain, which are being released into the environment; and

(d) Defendant's failure to otherwise exercise reasonable care in the operation, maintenance, handling, design, implementation and execution of the relief and recovery measures would result in harm to Petitioner.

25.

Therefore, the danger and risk of harm to Plaintiff was reasonably foreseeable to the Defendants.

Further, at all times pertinent hereto, Defendant had direct control of their employees. As such, they are vicariously liable for the delictual actions of their employees.

**SECOND CLAIM FOR RELIEF**

*Gross Negligence*

26.

Petitioner re-alleges each and every allegation set forth in all preceding paragraphs as if fully restated here.

27.

Defendant had a heightened duty of due care to Plaintiff because of the great danger associated with exposure to oil, dispersants, and/or other hazardous chemicals and breached their duty with reckless, willful, and wanton disregard of Petitioner's injuries which were reasonably foreseeable.

28.

As a cause-in-fact and proximate cause of Defendant's wanton or reckless acts, Petitioner has suffered physical injuries. Defendant's gross negligence, as described herein, entitles Plaintiff to punitive damages. The amount of punitive damages recoverable by Plaintiff is not

lawfully limited to the amount of their compensatory damages, but rather should be multiplier of same sufficient to both punish the Defendant and deter similar wrongdoing in the future.

29.

As a cause-in-fact and proximate cause of Defendants' violation of statutory and/or regulatory standards, the Plaintiff has suffered physical injuries.

**THIRD CLAIM FOR RELIEF**

*Negligence Per Se*

30.

Plaintiffs re-allege each and every allegation set forth in all preceding paragraphs as if fully restated here.

31.

Defendant's conduct with regard to the manufacture, maintenance and/or operation of recovery and clean-up operations and its vessel or fleet of vessels is governed by numerous state and federal laws and permits issued under the authority of these laws. These laws and permits create statutory and regulatory standards that are intended to protect and benefit Plaintiffs, including, but not limited to, those set forth in Section 311 of the Clean Water Act, 40 C.F.R. § 300 App. E, 30 C.F.R. Part 254 and the Oil Pollution Act, 33 U.S.C. § 2702 (the "OPA") *et. seq.*, and Florida Statutes Section 376.302.

32.

One or more of Defendants violated these statutory and/or regulatory standards.

Defendants' violations of these statutory and/or regulatory standards constitute negligence per se under Florida law.

**33.**

As a cause-in-fact and proximate cause of Defendants' violation of statutory and/or regulatory standards, the Plaintiffs have suffered physical injuries

**FOURTH CLAIM FOR RELIEF**

*Chapter 376. Pollutant Discharge Prevention and Removal*

**34.**

Plaintiffs re-allege each and every allegation set forth in all preceding paragraphs as if fully restated here.

**35.**

Throughout the summer of 2010 and thereafter, the defendants violated Florida Statutes Section 376.302 by permitting the pollution of Florida state waters and beaches with oil and Corexit.

**36.**

All of the defendants were well aware that the oil and Corexit contained contaminants which are pollutants and hazardous substances under Florida law.

**37.**

Agents and employees of the defendants directed the plaintiffs to come into contact with oil and Corexit.

**38.**

The Plaintiff was responsible for the removal of hazardous products containing petroleum and hazardous contaminants and therefore came into contact with these substances under the direction of the Defendant.

**39**.

Additionally, on multiple occasions, agents and employees of the Defendant instructed the Plaintiff to conceal oil and Corexit in the beach sand, to ignore oil washing ashore as well as contaminated seaweed on the beaches, and store, dispose, and/or improperly place oil, dispersant material, and/or at various locations.

**40.**

The Plaintiff came into contact with these hazardous substances by virtue of inhalation, dermal contact, ingestion of contaminated food provided by the Defendant, and hazardous substances being in contact with the Plaintiff's eyes.

**41**.

The Plaintiff was not given access to information that would have allowed them to have knowledge of the hazards and therefore protect themselves from exposure.

**42.**

The Plaintiff was actively misled about the hazards of tar balls and Corexit, not given appropriate safety equipment to prevent and/or minimize exposure, and given false information about safety equipment and protection.

**43.**

Safety equipment and protective gear was actively withheld from the Plaintiff.

**44.**

The Defendant is responsible for the intentional exposure of the Plaitniff to contaminants known to cause serious bodily injury and therefore is strictly liable to Plaintiff pursuant to § 376.205, Florida Statutes.

**45.**

The Defendant is liable for damages to the Plaintiff as defined in § 376.031 because the injuries resulted from a discharge or other condition of pollution pursuant to § 376.011-376.21, Florida Statutes.

**46.**

Pursuant to § 376.12(5), Defendant is liable for damages suffered by the Plaintiff as a result of the discharge or pollutive condition.

**47.**

The only defenses to Chapter 376's private right of action are set forth in § 376.12(7), Florida Statutes, which defenses are inapplicable and unavailable to the defendant.

The Deepwater Horizon Oil Spill itself constitutes a prohibited discharge within the meaning of Chapter 376.

**48.**

Under Cunningham v. Anchor Hocking Corporation, 558 So. 2d 93, 99 n.2 (Fla. 1st DCA 1990) and Section 376.313, Florida Statutes, the Defendant considered to be employer of the Plaintiff cannot rely on the worker's compensation exclusive remedy as a defense.

**49.**

As a result of the Defendant's violations of Chapter 376, Florida state lands and waters were polluted within the meaning of the Act.

**50.**

As a result of the defendants' violations of Chapter 376, the Plaintiff inhaled, ingested, or otherwise came into contact with pollutants or hazardous materials which caused bodily injury and resulting pain and suffering, disability, mental anguish, loss of capacity for enjoyment of

life, expense of hospitalization, medical and treatment, loss of earnings, loss of ability to earn money, and aggravation of pre-existing conditions. The losses are permanent or continuing and the Plaintiff will suffer the losses in the future.

**FIFTH CLAIM FOR RELIEF**

*Florida Medical Monitoring Claim*

51.

Plaintiff re-alleges each and every allegation set forth in all preceding paragraphs as if fully restated here.

52.

As a direct and/or proximate result of the Defendant's negligent conduct, the Plaintiff has been exposed to greater than normal levels of oil, dispersants, and/or other hazardous chemicals used for or resulting from the Oil Spill which has created a significantly increased risk of contracting a serious latent disease.

53.

The Plaintiff has required medical treatment as a result of injuries caused by exposure to oil and/or chemical dispersants and other hazardous chemicals used to combat or resulting from the Oil Spill and have not reached maximum medical improvement.

54.

Monitoring procedures exist that make the early detection of any latent disease possible that are different from those normally recommended in the absence of the exposure.

**55.**

Plaintiffs will suffer irreparable harm if the Court does not render the medical monitoring relief prayed for herein and if Defendants are not ordered to create, fund and support a medical monitoring program.

**56.**

Plaintiffs demand injunctive relief and equitable relief, in the form of Defendants being ordered to provide continued medical monitoring for Plaintiffs.

**SIXTH CLAIM FOR RELIEF**

*Punitive Damages*

**57.**

Plaintiff re-alleges each and every allegation set forth in all preceding paragraphs as if fully restated here.

**58.**

Defendant engaged in conduct so reckless, willful, wanton and in such utter and flagrant disregard for the safety and health of the public and the environment in its activities leading up to and/or during spill and clean-up efforts as alleged herein, that an award of punitive damages against it at the highest possible level is warranted and necessary to impose effective and optimal punishment and deterrence.

**59.**

Defendant recklessly, willfully and/or wantonly failed to ensure that Plaintiffs would be adequately protected from exposure to harmful chemicals in oil, chemical dispersants, and other harmful chemicals resulting from the Oil Spill.

**60.**

Defendants willfully and/or wantonly failed to ensure that that adequate safeguards, protocols, safety equipment, procedures, chemical data sheets, and other resources would be readily available to prevent and/or mitigate the effects of Plaintiff's exposure to oil, chemical dispersants, and/or oil/dispersant mixtures during the corresponding clean up response measures involving the use of chemical dispersants.

**61.**

Defendant's conduct was at the highest level of reprehensibility, warranting and necessitating the imposition of punitive damages at the highest level, because Defendant's conduct was motivated by financial gain; because it injured and endangered human health and safety; because it caused devastating damage and loss to the livelihood Plaintiff; because it was not isolated or accidental, but part of an ongoing pattern of conduct that consistently and repeatedly ignored risks the Plaintiff and to others in favor of financial advantage to the Defendant.

The punishment of the Defendant and deterrence from further repetition by the Defendant or others is of high necessity.

**62.**

Accordingly, the Plaintiff is entitled to an award of punitive damages according §768.72, Fla. Stat., and/or general maritime law in an amount to be determined at trial.

**SEVENTH CLAIM FOR RELIEF**

*Unseaworthiness*

**63.**

Plaintiff re-alleges each and every allegation set forth in all preceding paragraphs as if fully restated here.

**64.**

Plaintiff claims that the incidents giving rise to this cause of action were directly and proximately caused by the Defendant's failure to maintain a seaworthy vessel in the following, non-exclusive respects:

a. Failure to take necessary precautions to ensure that the work environment was reasonably fit for its intended use;

b. Failure to take necessary precautions; and

c. Any other unseaworthy conditions determined at the trial of this matter.

**EIGTH CLAIM FOR RELIEF**

*Maintenance and Cure*

**65.**

Plaintiff re-alleges each and every allegation set forth in all preceding paragraphs as if fully restated here.

**66.**

Finally, Plaintiff claims that the Defendant is liable for the willful, wanton, and arbitrary failure to pay maintenance and cure owed to the Petitioner.

Petitioner itemizes his damages as follows:

a. Past, present, and future pain and suffering;

b. Past, present, and future medical, hospital, and pharmaceutical expenses;

c. Economic losses; and,

    d. Any other damages itemized at the trial of this matter.

## V. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant jointly and severally as follows:

1) Compensatory damages in amounts to be determined at trial;
2) Punitive damages;
3) Damages for medical screening and monitoring;
4) Unseaworthiness damages;
5) Maintenance and Cure;
6) The implementation of a medical screening and monitoring program to be funded by the Defendants;
7) Pre-judgment and post-judgment interest at the maximum rate allowable by law;
8) Attorneys' fees and costs of litigation;
9) Injunction to require medical screening and monitoring;
10) Any other and further relief available under all applicable state and federal laws; and
11) Any other and further relief the Court deems just and proper.

Respectfully submitted,

/s/ Allen W. J. Lindsay, Jr.
**LINDSAY & ANDREWS, P.A.**
Allen W. Lindsay, Jr. (Bar # 104956)
5218 Willing Street
Milton, FL  32570
Phone: 850-623-3200
Fax: 850-623-0104
Attorney for Plaintiffs
awl@lal-law.com